IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**ANGELO JACOB FERMO,**

    Plaintiff,

v.                                                         Civil Action No. 1:24-cv-00308-JB-MU

**UNITED STATES OF AMERICA,**

    Defendants.

---

### FIRST AMENDED COMPLAINT

COMES NOW ANGELO JACOB FERMO, Plaintiff in the above-captioned matter, and files this his First Amended Complaint in this matter pursuant to the Court's order of June 3, 2025. In support thereof, Plaintiff states as follows:

#### AMENDMENTS

This Amended Complaint contains only a claim for negligence against the United States of America for money damages pursuant to the Federal Tort Claims Act (FTCA). *See* 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C § 2679(a), (b)(1). This Amended Complaint alleges in full as follows:

#### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Angelo Jacob Fermo ("Plaintiff" or "Fermo") is a United States Citizen and, at all times relevant hereto, was a resident of Baldwin County, Alabama. Fermo is a disabled, medically retired former Supervisory Special Agent with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") and Homeland Security Investigations ("HSI").

2. Defendant the United States of America is the only true and proper defendant in a case brought pursuant to the FTCA. *See* 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C § 2679(a), (b)(1).

3. Jurisdiction and venue are proper in this Court as the United States District Courts are vested with exclusive jurisdiction over FTCA claims for money damages related to personal injuries that accrue in their respective districts, *see* 28 U.S.C. § 1346(b)(1), and because all negligent and wrongful actions and inactions by the federal employees which give rise to this lawsuit occurred within the Southern District of Alabama.

## FACTS

4. On February 3, 2017, Fermo was acting in his capacity as a supervisory special agent for ICE and HSI in the DHS offices in Mobile, Alabama. A fellow agent, Robert Burns, entered Fermo's office and held Fermo at gunpoint over an unpaid travel voucher that Burns wanted paid. Fermo was successful in talking Agent Burns down and having the voucher paid ("the February 3 incident").

5. Subsequent to the February 3 incident, Agent Burns was terminated from his employment with DHS and ultimately pled guilty in March of 2018 to one count of Assaulting a Federal Officer in violation of 18 U.S.C § 111. Burns was sentenced in July of 2018 to 3 years of probation and forced to pay a fine of $1,100.00.

6. Subsequent to the February 3 incident, Fermo sought medical treatment for symptoms secondary to the incident. On February 16, 2017, Fermo filed a Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation ("CA-1"). In his CA-1, Fermo stated that he was suffering from "extreme migraine's [sic], constant headaches and insomnia" because of the February 3 incident.

7. Fermo began lengthy medical treatment with multiple doctors for his injuries. On or about June 26, 2018, Fermo's CA-1 claim for traumatic injury was accepted and Fermo was given the diagnosis, by a doctor employed and/or paid for by Defendant, of "Post Traumatic Stress Disorder (PTSD), **Resolving**" (emphasis added). As of June 26, 2018, Fermo had cause to believe that his PTSD secondary to the February 3 incident was resolving and in fact would be resolved.

8. Fermo continued treating for his PTSD with multiple doctors employed and/or paid by Defendant until he was notified in October of 2021 that his PTSD was permanent and that he should be medically retired from his employment with DHS.

9. During the years in which he was treating with Defendant's doctors for PTSD, Resolving, secondary to the February 3 incident, Fermo continued to work in a supervisory capacity with DHS.

10. Upon information and belief, DHS, ICE and/or HSI had policies and procedures in place to respond to a situation such as the February 3 incident. Upon information and belief, these policies and procedures included steps to change locks and/or doors, remove items related to the incident that might cause ongoing trauma to victims of the incident, and/or relocate victim(s) to different offices or buildings to minimize ongoing trauma.

11. Defendant, by and through its officers, agents and employees, negligently failed to follow its own policies and procedures following the February 3 incident, thereby compounding the traumatic effect of the February 3 incident on Fermo and furthering his injury.

12. In addition, and/or in the alternative, upon information and belief, DHS, ICE and/or HSI negligently failed to have sufficient policies and procedures in place to respond to the February 3 incident, including allowing Fermo to return to work after only a week of leave following the

February 3 incident and by allowing Fermo to remain in a supervisory capacity throughout the remainder of his employment at DHS.

13. Defendant's negligence following the February 3 incident continued throughout the remainder of Fermo's employment at DHS and directly caused and contributed to the compounding and exacerbation of Fermo's PTSD, leading to Fermo's ultimate diagnosis in October 2021 that required his permanent and total disability retirement.

14. Defendant's negligence following the February 3 incident continued up to and included October 2021, when Fermo received notice of his permanent and total injury and its cause(s). Moreover, Defendant's negligence placed Fermo in an ongoing zone of danger due to Defendant's failure to follow its own policies and procedures following the February 3 incident and/or Defendant's negligence in failing to have sufficient policies and procedures in place following the February 3 incident.

15. At all times relevant hereto, Fermo believed that his PTSD secondary to the February 3 incident was resolving and that he would heal and be allowed to remain in his employment at DHS until his natural retirement. The combined negligence of DHS, ICE and/or HSI compounded Fermo's injury, directly and proximately causing his permanent and total injury in October 2021 which forced his disability retirement.

16. Additionally and/or in the alternative, Fermo's mental injury constituted an extraordinary circumstance that prevented him from fully appreciating the extent and causes of his injury until October of 2021. Fermo's mental injury prevented him from recognizing that his continued service in a high-responsibility capacity with DHS, ICE and/or HSI was causing his condition, which had been initially diagnosed as Resolving, to instead deteriorate, leading to his ultimate permanent and total injury in October 2021.

17. Fermo was initially diagnosed with PTSD, Resolving, on or about June 26, 2018, with reported symptoms of migraines, headaches and insomnia. Yet according to Fermo's doctors, who were employed and/or paid by Defendant, as of October 2021, Fermo now suffered from anxiety, insomnia, nightmares, flashbacks, functional impairment, increased blood pressure, increased heart rate, fatigue, muscle tension, joint pain, depression, hyper focus, irritability, lack of focus, attention problems, loss of purpose, and chest pains, among other physical and mental symptoms.

18. According to Fermo's doctors, who were employed and/or paid by Defendant, Fermo's condition worsened during his continued employment with DHS following the February 3 incident. Fermo's continuing and worsening mental health during the years following the February 3 incident up until his October 2021 diagnosis as permanently and totally disabled constitute an extraordinary circumstance that directly prevented him from comprehending the nature and extent of his injury, which he had been told by his doctors, who were employed and/or paid by Defendant, was resolving. These extraordinary circumstances continued throughout Fermo's continued employment as a supervisor with DHS until October 2021 and directly prevented Fermo from filing a Notice of Claim with Defendant, because Fermo thought his condition was resolving and because Fermo failed to comprehend that Defendant's ongoing negligence was causing his condition to worsen.

19. Moreover, Defendant's continued negligence up to and including October 2021 in allowing Fermo to remain in his supervisory role while suffering from a litany of physical and mental impairments, thereby causing his condition to deteriorate such that his once resolving PTSD became permanent and total in October 2021, was not known or knowable to Fermo until October 2021, as Fermo believed his PTSD from the February 3 incident to be resolving, and was not aware

that Defendant's ongoing and continued negligence caused a permanent and total injury until October 2021.

20. Additionally, and/or in the alternative, Fermo's permanent and total PTSD in October 2021 constitutes a separate and distinct injury from his initial PTSD, Resolving, secondary to the February 3 incident, which separate and distinct injury did not accrue until October 2021 and was directly and proximately caused by Defendant's continued negligence.

21. As a direct and proximate result of Defendant's negligence, Fermo has suffered and continues to suffer physical and emotional injuries, severe mental and emotional distress, trauma, and a loss in wages and earning capacity. Accordingly, Fermo is entitled to significant money damages for his injuries caused by Defendant's negligence.

22. Fermo filed a Notice of Claim form (SF-95) with the appropriate federal agency on September 24, 2023, less than two years after the accrual of his claim in October 2021.

23. Additionally, and/or in the alternative, Fermo filed his SF-95 on September 24, 2023, less than two years after Fermo discovered or reasonably could have discovered his permanent and total injury and the cause(s) thereof in October 2021.

## CAUSES OF ACTION

### COUNT 1—NEGLIGENCE

24. Plaintiff hereby incorporates all allegations set forth above as if fully stated in this cause of action.

25. Plaintiff was directly and proximately injured by the negligent acts and omissions of Defendant, as set forth above.

26. Defendant's ongoing negligent acts and omissions subsequent to the February 3 incident directly caused and contributed to Plaintiff's permanent and total PTSD, which injury includes severe physical, mental, and emotional injuries.

27. Defendant's negligent acts and omissions directly caused Plaintiff's permanent and total PTSD diagnosis in October 2021, despite Plaintiff's doctors, who were employed and/or paid by Defendant, telling Plaintiff that his injuries were temporary and resolving subsequent to the February 3 incident.

28. Moreover, Plaintiff's severe ongoing mental and emotional injuries constitute an extraordinary circumstance which actively prevented Plaintiff from discovering or reasonably being able to discover his injury or the ongoing cause(s) thereof until October 2021.

29. As a direct and proximate result of Defendant's negligence, Fermo has suffered and continues to suffer physical and emotional injuries, severe mental and emotional distress, trauma, and a loss in wages and earning capacity. Accordingly, Fermo is entitled to significant money damages for his injuries caused by Defendant's negligence.

### COUNT TWO—VICARIOUS LIABILITY AND RESPONDEAT SUPERIOR

30. Plaintiff hereby incorporates all allegations set forth above as if fully stated in this cause of action.

31. At all times relevant hereto, all employees, directors, supervisors, administrators, agents, and/or staff of DHS, ICE and/or HSI were employed by and/or acted on behalf of Defendant.

32. At all times relevant hereto, all employees, directors, supervisors, administrators, agents, and/or staff of DHS, ICE and/or HSI acted within the scope of their employment and/or agency on behalf of Defendant.

33. These employees, directors, supervisors, administrators, agents, and/or staff of DHS, ICE and/or HIS negligently acted or failed to act in a way so as to cause Plaintiff's injuries. The combined negligence of these employees, directors, supervisors, administrators, agents, and/or staff directly and proximately caused Plaintiff's October 2021 permanent and total injury.

34. As a direct and proximate result of the combined negligence of these employees, directors, supervisors, administrators, agents, and/or staff, Fermo has suffered and continues to suffer physical and emotional injuries, severe mental and emotional distress, trauma, and a loss in wages and earning capacity. Accordingly, Fermo is entitled to significant money damages for his injuries caused by Defendant's negligence.

35. Defendant is vicariously liable for the negligent acts and omissions of these employees, directors, supervisors, administrators, agents, and/or staff according to the doctrine of *respondeat superior*.

## CONCLUSION

36. The negligent acts and/or omissions set forth above would constitute a valid claim under the law of the State of Alabama.

37. Defendant is liable pursuant to 8 U.S.C. § 1346(b)(1).

WHEREFORE, PREMISES CONSIDERED, Plaintiff is entitled to significant money damages for his permanent and total physical and mental injuries, lost wages, and loss of earning capacity.

Respectfully submitted this the 29th day of July, 2025, by:

/s/     *Jeremiah M. Mosley*
Jeremiah M. Mosley
3530 Independence Drive
Birmingham, AL 35209
jeremiahmm@gmail.com
(205) 532-2602

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 29, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, and was served via electronic mail to victoria.todd@usdoj.gov.

                                      /s/  *Jeremiah M. Mosley*
                                      OF COUNSEL